UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
JOHN FERRARA,                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )    Case No. 16-cv-12024-LTS
                                 )
VOYPORT II, LLC, et al.,         )
                                 )
        Defendants.              )
                                 )

ORDER ON MOTION TO DISMISS

April 7, 2017

SOROKIN, J.

Defendants have moved to dismiss this case for lack of personal jurisdiction.[1] Doc. 7. For the reasons that follow, the Court ALLOWS IN PART and DENIES IN PART Defendants' Motion.

I.  BACKGROUND

From September 8, 2014, until March 31, 2015, Plaintiff John Ferrara worked for Defendants Voyport II, LLC ("Voyport"), a telecommunications company; its parent company, Voyport Group Holdings, LLC ("VGH"); and Voyport employees Allen Preece, Adam Conyers, and Jay Rosenblatt. Doc. 1 at 7-11. Plaintiff worked for Defendants pursuant to a contract executed in August 2014. Id. at 10. Plaintiff asserts the contract illegally "misclassified him as an independent contractor when he was in fact an employee." Doc. 13 at 1. He alleges that, starting in November 2014, Defendants "failed to pay [him] his monthly salary." Doc. 1 at 11.

---

[1] They have not moved to dismiss on any other ground, such as failure to state a claim.

1

He further alleges that, in March 2015, after he complained to Defendants about their failure to pay, they fired him in retaliation under the pretext that he had been insubordinate.  Id.  Plaintiff is suing all Defendants for (1) violating the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148; (2) violating the Massachusetts Minimum Wage Law, Mass. Gen. Laws ch. 151, § 1; (3) retaliating against him in violation of Mass. Gen. Laws ch. 149, § 148A; (4) breach of contract; and (5) unjust enrichment.[2]  Id. at 13.

## II.    RELEVANT JURISDICTIONAL FACTS[3]

Plaintiff's "employment relationship with Defendants" began when Conyers "presented [him] with a contract," which was addressed to Plaintiff at his home in Medford.  Doc. 13-1 (Affidavit of John Ferrara) at 1.  Conyers emailed Plaintiff "multiple versions of the contract" and "negotiated the terms of the contract" with Plaintiff.  Id.  Plaintiff and Conyers then "signed the final version of the contract."  Id.

During all relevant times, Plaintiff "resided and worked for Voyport in Massachusetts[,] and sent and received email and telephone communications" in Massachusetts.  Doc. 13-1 at 1.  Plaintiff's title was Regional Sales Director of New England.  Id.  Plaintiff's "work for Defendants was focused on Voyport's Massachusetts business."  Id. at 2.  Plaintiff "was given a list of Massachusetts leads to contact and worked with clients and potential clients in Massachusetts."  Id.  Plaintiff "received and sent communications regularly to the individual defendants in this case relating to [their] work" together.  Id.  Plaintiff sent invoices for his

---

[2] Plaintiff alleges unjust enrichment as an alternative claim for relief if he does not recover for breach of contract. Doc. 1 at 14.

[3] In this section, the Court recites facts from Plaintiff's "properly documented evidentiary proffers and from those portions of the defendants' proffers that are undisputed."  Copia Communications, LLC v. AMResorts, L.P., 812 F.3d 1, 3 (1st Cir. 2016) (citation omitted).

2

services to Conyers, from Massachusetts.  Id.  "[W]hen Defendants did not pay [Plaintiff] for [his] work, [he] communicated with Conyers by both telephone and email to attempt to obtain payment."  Id.

Plaintiff "also communicated with Defendant Allen Preece about Defendants' failure to pay," and Preece "communicated to [Plaintiff] about the possibility of resolving [his] claim for unpaid wages."[4]  Id.

Conyers "terminated [Plaintiff's] employment with Defendants, by email dated March 27, 2015, which was sent to [Plaintiff] while [he] was residing and working in Massachusetts."  Id.

Voyport (1) is a Delaware corporation, with its principal place of business in McLean, Virginia"; (2) "has no offices, customers or employees in Massachusetts"; (3) "is not registered to do business in Massachusetts"; (4) "has never paid taxes in Massachusetts"; and (5) did not send anyone to Massachusetts to negotiate or sign the August 2014 contract.  Doc. 8 at 2; Doc. 9 at 2.

VGH (1) is a Delaware corporation that is merely a holding company, not an "operating entity"; (2) "is not registered to do business in Massachusetts"; (3) "has never paid taxes in Massachusetts"; and (4) has never had a contract with Plaintiff.  Doc. 8 at 2; Doc. 9 at 2, 4.

---

[4] In support of these assertions, Plaintiff cites to the entirety of Doc. 13-5, which consists of 22 pages of emails between Plaintiff and various Voyport employees.  See Doc. 13-1 at 2.  Plaintiff does not direct the Court to the specific communications that purportedly support jurisdiction over Preece, let alone specifically explain how they support jurisdiction.  Id.  As far as the Court can tell, the only emails specifically to or from Preece are from January 13, 2016, well after the alleged breach of contract and retaliation occurred.  Doc. 13-5 at 20-21; see Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) (stating that, for "purposes of specific jurisdiction, contacts should be judged when the cause of action arose") (citation and internal quotation marks omitted).  Plaintiff bears responsibility for directing the Court to evidence in the record that supports his position, which requires more than merely filing a batch of emails and baldly asserting that they establish jurisdiction over a defendant.  See Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 42 (1st Cir. 2006); Horne v. City of Boston, 509 F. Supp. 2d 97, 113 n.25 (D. Mass. 2007).

Preece (1) is Voyport's chairman and chief executive officer (CEO); (2) is currently the sole employee of Voyport; (3) has lived in Canada "since 1979, and at all times while [he] was Chairman and CEO of Voyport"; (4) has "never traveled to Massachusetts for business reasons"; (5) has "never owned real or personal property in Massachusetts"; (6) has "not traveled to Massachusetts for any reason since the mid-1990s"; (7) has "never paid taxes in Massachusetts"; and (8) has "no professional licenses or registrations in Massachusetts."  Doc. 8 at 1.

Conyers (1) was, at all relevant times, Voyport's chief financial officer (CFO); (2) has lived in Canada "for the last 30 years, and at all times while [he] was CFO of Voyport"; (3) has "not traveled to Massachusetts, for business or for personal reasons[,] in the past 10 years, and never while the CFO of Voyport"; (4) has "never owned real or personal property in Massachusetts"; (5) has "never paid taxes in Massachusetts"; and (6) has "no professional licenses or registrations in Massachusetts."  Doc. 9 at 1-2.

Rosenblatt "perform[ed] the function of" Voyport's chief operating officer (COO) through a consulting agreement.  Doc. 10 at 1.  Like Preece and Conyers, Rosenblatt has never lived in Massachusetts, traveled to Massachusetts for business reasons, owned property in Massachusetts, or paid taxes in Massachusetts, and he has "no professional licenses or registrations in Massachusetts."  Id. at 1-2.

III.   RELEVANT LAW

"The Due Process Clause of the Fourteenth Amendment requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016) (citations and internal quotation marks

omitted). "This due process test is flexible and fact-specific, written more in shades of grey than in black and white." Id. (citation and internal quotation marks omitted). To satisfy the due process requirement, the Court must have either "general jurisdiction, which requires that the defendant have continuous and systematic contacts with the state," or "specific jurisdiction, where the claim must be related to the defendant's contacts."[5] Phillips v. Prairie Eye Center, 530 F.3d 22, 26 (1st Cir. 2008) (citation omitted).

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Baskin-Robbins, 825 F.3d at 34 (citations and internal quotation marks omitted). Thus, Plaintiff must show that the Court's "assertion of personal jurisdiction over [Defendants] would satisfy the requirements of both the Due Process Clause of the federal Constitution and the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3." Id. In this case, any difference between the requirements of the long-arm statute and the Due Process Clause is "not material," so the Court may "move directly to the constitutional analysis." Id. at 34 & n.3 (noting that the long-arm statute's standard in disputes involving business transactions is "not especially rigorous"); see also Cossart v. United Excel Corp., 804 F.3d 13, 18-19 (1st Cir. 2015) (explaining the "generous" construction of the statute in contract and business cases) (citation and internal quotation marks omitted).

For the Court to have specific jurisdiction over a defendant under the Due Process Clause, (1) "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities"; (2) "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby

---

[5] Plaintiff only argues that the Court has specific jurisdiction over Defendants, not general jurisdiction. See Doc. 13 at 7-12.

invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable"; and (3) the exercise of jurisdiction must be "reasonable." Copia Communications, 812 F.3d at 4 (citations and internal quotation marks omitted). In "typical" tort cases, when analyzing the first prong, relatedness, the Court's "inquiry is whether the plaintiff has established cause in fact (i.e., the injury would not have occurred but for the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." Hannon v. Beard, 524 F.3d 275, 282 (1st Cir. 2008) (citation and internal quotation marks omitted). Conversely, in a contract dispute, the Court "look[s] to whether the defendant's activity in the forum state was instrumental either in the formation of the contract or its breach." Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011) (citations and internal quotation marks omitted). Where a tort claim and contract claim "are sufficiently connected," however, the difference in analysis is "of no concern." Phillips v. Prairie Eye Center, 530 F.3d 22, 27 (1st Cir. 2008).

"The plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state." Baskin-Robbins, 825 F.3d at 34 (citation omitted). "Faced with a motion to dismiss for lack of personal jurisdiction, a district court may choose from among several methods for determining whether the plaintiff has met its burden," the "most common[]" being the prima facie method. Id. (citations, internal quotation marks, and alterations omitted); A Corp. v. All American Plumbing, 812 F.3d 54, 58 n.5 (1st Cir. 2016) (citation and internal quotation marks omitted). Under that method, the plaintiff must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins, 825 F.3d at 34 (citations omitted). "It is not enough for [a plaintiff] to rely on unsupported allegations in its pleadings." A Corp., 812 F.3d at 58 (citations and internal quotation marks

omitted).  "Rather, [the plaintiff] must put forward evidence of specific facts to demonstrate that jurisdiction exists."  Id. (citations and internal quotation marks omitted); see also Carreras v. PMG Collins, LLC, 660 F.3d 549, 552 (1st Cir. 2011) ("A court need not . . . credit bald allegations or unsupported conclusions.").  The Court "must accept [the plaintiff's] properly documented evidentiary proffers as true and construe them in the light most favorable to [its] jurisdictional claim."  A Corp., 812 F.3d at 58 (citations omitted).  The Court will "also consider facts offered by [Defendants], to the extent that they are not disputed."  Id. (citation omitted).

IV.     DISCUSSION

The Court will address whether specific jurisdiction exists over each of the five Defendants in turn.

The Court has jurisdiction over Voyport.  Voyport (through Conyers) negotiated the terms of the contract while Plaintiff lived in Massachusetts, and then mailed the contract to his home in the state.  Doc. 13-1 at 1.  Plaintiff resided and worked for Voyport here, with his work "focused on" pursuing "Massachusetts leads."  Id. at 2; see Cossart, 804 F.3d at 20 (holding that this Court had jurisdiction over a non-resident company and its non-resident president because the lawsuit at issue "ar[ose] out of an alleged breach . . . of [a] contract [they] procured with a Massachusetts resident to be performed by the resident primarily from Massachusetts").  Plaintiff also sent the company (specifically to Conyers) invoices for his services from Massachusetts.  Doc. 13-1 at 2.  Moreover, when Voyport allegedly breached the contract, which gave rise to Plaintiff's Wage Act claim,[6] Plaintiff communicated with the company (via Conyers) "by both telephone and email to attempt to obtain payment."  Doc. 13-1 at 2; see Cossart, 804 F.3d at 21

---

[6] Breach of an employment contract may "directly giv[e] rise" to a Wage Act claim.  Cossart, 804 F.3d at 21.

(noting that non-resident company and president allegedly breached employment contract "via e-mail and phone conversations with [the plaintiff] in Massachusetts"). Finally, the company (via Conyers) allegedly retaliated against Plaintiff by firing him via email while he was in Massachusetts. Doc. 13-1 at 2. These contacts satisfy both relatedness and purposeful availment with respect to Voyport on all counts. Cf. Cossart, 804 F.3d at 21 (stating that the in-state contacts the Court "identified in the relatedness inquiry" also demonstrated purposeful availment). The Court also finds, after considering the five "gestalt" factors, that exercising jurisdiction over the company is reasonable. Id. at 22.

The Court lacks jurisdiction over VGH. Plaintiff fails to allege that any activities – let alone any forum-state activities – by VGH contributed to his alleged harm. See Copia Communications, 812 F.3d at 4. Moreover, "as a general rule, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent," and Plaintiff has not presented any information to "overcome" this "presumption of corporate separateness." Mullaly v. Sunrise Senior Living Management, Inc., __ F. Supp. 3d __, 2016 WL 7381688, at *6 (D. Mass. 2016) (citation and internal quotation marks omitted).

The Court lacks jurisdiction over Preece. The only in-state contacts by Preece that the Court knows of occurred well after the alleged acts giving rise to this suit. See supra n.4.

The Court has jurisdiction over Conyers with respect to Claims One and Two, for violation of Massachusetts wage laws, and for Claim Three, retaliation. Conyers engaged in the same contacts that support a finding of jurisdiction over Voyport on those claims. See supra; see also Cossart, 804 F.3d at 17 n.2 (noting that the Wage Act "expressly subjects" the treasurer of a corporation "to individual liability when their employer is sued under the Act") (citations omitted). The Court dismisses Claims Four and Five, for breach of contract and unjust

8

enrichment, as to Conyers; as defense counsel noted at the hearing on this Motion, Conyers signed the August 2014 contract merely in his capacity as CFO and, thus, did not "'become a party to the agreement'" himself. Beram v. Ceaco, Inc., __ F. Supp. 3d __, 2016 WL 7030427, at *6 (D. Mass. 2016) (quoting McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994)).

Finally, the Court lacks jurisdiction over Rosenblatt. As with VGH, Plaintiff fails to allege that any activities – let alone any forum-state activities – by Rosenblatt contributed to his alleged harm. See Copia Communications, 812 F.3d at 4.

V.  CONCLUSION

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART the Motion to Dismiss (Doc. 7). This action is DISMISSED in its entirety as to Defendants VGH, Allen Preece, and Jay Rosenblatt. Claim Four (for breach of contract) and Claim Five (for unjust enrichment) are DISMISSED as to Defendant Adam Conyers.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge