UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
JOHN FERRARA,                               )
                                            )
         Plaintiff,                         )
                                            )
v.                                          )    Case No. 16-cv-12024-LTS
                                            )
VOYPORT II, LLC, et al.,                    )
                                            )
         Defendants.                        )
                                            )

ORDER ON MOTION FOR ENTRY OF DEFAULT JUDGMENT (DOC. NO. 57) AND
MOTION FOR SUMMARY JUDGMENT (DOC. NO. 58)

October 29, 2018

SOROKIN, J.

Pending before the Court are a motion for default judgment against Defendant Voyport II, LLC ("Voyport") and a motion for summary judgment against both Voyport and Defendant Adam Conyers.

I.      BACKGROUND

In August 2014, Ferrara was hired by Voyport. Doc. No. 67 ¶ 1. He was initially hired by Elizabeth Davenport, who held the title of Vice President of Sales. Id. Conyers, the Chief Financial Officer ("CFO") of Voyport, completed and signed a "Contractor-Consulting Agreement" ("the Contract")[1] on behalf of Voyport. Id. ¶¶ 2-4. The Contract describes Voyport's business as "provid[ing] business customers with a full-featured, cost-efficient

---

[1] The final version of the Contract (submitted by both parties) is signed by both Ferrara and Conyers, but appears to be missing a page, which would include paragraphs 12-17. Doc. No. 60-2; Doc. No. 62-1 at 31-36. Based on previous versions of the Contract submitted by the parties, the provisions on the missing page do not appear to be material to the Court's resolution of the pending motions. See Doc. No. 62-1 at 8-14, 19-25.

international mobile voice roaming communications service ('Product'), using a combination of dedicated, intelligent international data routing, existing smartphone capabilities, and simplified business integration." Doc. No. 60-2 at 1. It further describes Ferrara's role as "act[ing] as a direct business to business sales representative" for Voyport. Id. It is undisputed that during his work for Voyport, Ferrara "reported directly to Elizabeth Davenport," the Vice President of Sales. Doc. No. 67 ¶ 14.

In a paragraph titled "Independent Contractor," the Contract states that Ferrara was "not an employee of [Voyport], and that the relationship [was] that of an independent contractor." Doc. No. 60-2 at 2. The Contract gave Ferrara the "right to promote the sale of the Product and related services . . . through tactics deemed appropriate by the Company, including but not limited to personal and professional networks, referrals and recommendations." Id. at 3. It also included a non-compete clause, which required Ferrara to "discuss with [Voyport], in advance, any undertakings that are contemplated, or in existence, to work for other companies that could be considered competitors" to Voyport, including a warning that the "failure to raise these matters and obtain prior written consent from [Voyport] shall constitute an automatic breach of this Agreement and [Voyport] may immediately terminate this Agreement without further notice." Id. at 4. The Contract also contained a provision which permitted Voyport to terminate Ferrara without cause if it gave him 90 days written notice or "90 days paid settlement in lieu of notice." Id. at 3.

By late 2014, Voyport "had essentially run out of money." Doc. No. 63 ¶ 30. In October of that year, Ferrara began sending periodic emails to Conyers noting that he had not yet received any money for his services and asking when he should expect to be paid. See Docs. No. 60-13 at 1-5, 60-7 at 1, 60-18 at 1. The first of these email inquiries is dated October 1, 2014,

Doc. No. 60-13 at 1, and the last is dated March 26, 2015, Doc. No. 60-18 at 3. Ferrara asserts that he was not paid for the services rendered from November 2014 through March 2015, his last five months with Voyport. Doc. No. 67 ¶ 27. In April 2015, Conyers sent Ferrara a proposed release for approximately $30,000, reflecting "the amount of consulting fees and other amounts due [] for the months of November 2014 through to March 2015," Doc. No. 60-16, which Ferrara declined, Doc. No. 60-15 at 1. Ferrara claims the following unpaid wages:

> $5,500 in base salary x 5 months = $27,500
> $250 in health insurance reimbursement x 5 months = $1,250
> $250 in commission bonuses x 4 months = $1,000
> $29.22 for business cards
> $959.78 in late fees accrued by Ferrara
> $5,500 in base salary x 3 months = $16,500 (payment-in-lieu-of-notice)
> $250 in health ins. reimbursement x 3 months = $750 (payment-in-lieu-of-notice)

Doc. No. 58 at 9-11. Ferrara further argues that each of the items listed above is subject to mandatory trebling by statute. Id.

Ferrara has brought five claims: (1) violation of the Massachusetts Wage Act; (2) violation of the Massachusetts Minimum Wage Law; (3) retaliation; (4) breach of contract; and (5) unjust enrichment. Doc. No. 1 at 13-14. The Court lacked personal jurisdiction over VGH and two individual defendants, and therefore dismissed all claims against those three defendants. Doc. No. 30. In addition, the Court found that it lacked personal jurisdiction over, and thus dismissed, the breach of contract and unjust enrichment claims against Conyers. Id. At this time, all five claims remain against Voyport, and Counts I – III remain against Conyers.

In February 2018, the Court allowed defense counsel's motion to withdraw, and ordered Voyport to obtain successor counsel. Doc. No. 53 at 1. The Court instructed Voyport that failure to obtain a successor counsel might result in default judgment. Id. To date, Voyport has

not obtained counsel. Accordingly, Ferrara has filed a motion for default judgment against Voyport, in addition to a motion for summary judgment against both Voyport and Conyers.

II. LEGAL STANDARD

The Court applies the familiar summary judgment standard. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009).

III. DISCUSSION

Ferrara moved for summary judgment on all remaining counts. Conyers filed an opposition to the motion for summary judgment. Voyport, unrepresented, has not opposed. The Court addresses the issues presented separately as to each defendant. Though Voyport has not opposed the motion for summary judgment, the Court considers the merits of the motion against Voyport. In doing so, the Court considers Conyers's arguments presented in his opposition briefs because the issues presented overlap between the two defendants.

A. Count I Against Voyport

Ferrara's first claim is brought under the Massachusetts Wage Act, which applies only to employer-employee relationships. Mass. Gen. Laws ch. 149, § 148. In order to determine

whether such a relationship exists, Massachusetts courts apply a two-step inquiry under the "Independent Contractor Statute." Id. § 148B. First, the "threshold question is whether the plaintiff[] provided services to the defendant[]," which creates a presumption that the individual is an employee. Sebago v. Boston Cab Dispatch, Inc., 471 Mass. 321, 327 (2015). "Under the second step, the putative employer may rebut that presumption by proving, pursuant to a three-part test, that the person worked as an independent contractor." Gallagher v. Cerebral Palsy of Massachusetts, Inc., 92 Mass. App. Ct. 207, 210 (2017).

Therefore, an individual who performs a service for a putative employer is an employee unless:

> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
> (2) the service is performed outside the usual course of the business of the employer; and,
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 149, § 148B. In order to rebut the presumption that the individual is an employee, the employer must satisfy all three parts of the test. Furthermore, even an agreement between the parties that the individual was an independent contractor will not be dispositive in determining whether the individual was actually an employee. "Regardless of the agreement between the plaintiff and [the employer], and regardless of the parties' intentions that his work be performed as an independent contractor, unless [the employer] successfully satisfies the requirements of G.L. c. 149, § 148B, the plaintiff was [the employer's] employee." Somers v. Converged Access, Inc., 454 Mass. 582, 591 (2009); see also Awuah v. Coverall N. Am., Inc., 707 F. Supp. 2d 80, 83 (D. Mass. 2010) (reviewing cases in which an employer was found to

5

have misclassified employees as independent contractors, even though the employees' contracts classified them as independent contractors).[2]

Whether Ferrara provided services to Voyport is a question of fact. See Sebago, 471 Mass. at 331. However, even viewing all facts in the light most favorable to the defendants and drawing all reasonable inferences in their favor, there is no genuine dispute that Ferrara provided services to Voyport. The first page of the Contract states that Voyport "agrees to retain the services of" Ferrara and outlines the "terms and conditions" for those services. Doc. No. 60-2 at 1. The subsequent paragraph, titled "Services," states that Ferrara was to "act as a direct business to business sales representative for [Voyport], introducing the Product to mid to large US based international business customers, supporting [Voyport] in negotiations, closing agreements and launching these customers on the Product." Id.

The evidence on the record shows that these are indeed the services Ferrara provided to Voyport. Ferrara states under oath that "[a]fter [he] was hired, Davenport sent [him] a spreadsheet of names and phone number[s] for [him] to contact," and that she continued to do so until "January or February 2015." Doc. No. 66-2 ¶ 6. He further states that he had both daily and weekly phone meetings scheduled with Davenport and other members of the sales team, id. ¶¶ 12, 15-16, and submits text messages and emails documenting some of these meetings, Docs. No. 66-23, 66-24, 66-25. Emails between Ferrara and Voyport senior management show that Ferrara reached an agreement with a Boston-based law firm for a "trial run" of Voyport's services. Docs. No. 60-5, 60-6. Ferrara also states that he "brought on a Derby agent and her client as paying customers," and that he brought Clarks' Shoes "on as trial users." Doc. No. 66-2

---

[2] The fact that the Contract classifies Ferrara as an independent contractor, Doc. No. 60-2 at 1-2, is therefore not dispositive of whether he was an employee under the Wage Act.

¶¶ 18, 23. Conyers has not set forth any evidence to suggest that Ferrara did not perform services. In fact, in his opposition to the motion for summary judgment, Conyers describes "Ferrara's attempts to solicit potential customers." Doc. No. 62 at 4-5. Based on the undisputed evidence, Ferrara is presumed to have been an employee of Voyport.

Voyport cannot meet its burden under the three-part test to prove that Ferrara was actually an independent contractor within the meaning of the Independent Contractor Statute. At a minimum, Voyport cannot meet its burden under the second prong to prove that the services were performed outside the usual course of its business. The Supreme Judicial Court ("SJC") has "recognized that a purported employer's own definition of its business is indicative of the usual course of that business." Sebago, 471 Mass. at 333 (citing Athol Daily News v. Bd. of Review of Div. of Employment and Training, 439 Mass. 171, 177 (2003)). An additional factor is whether the services are necessary to the employer's business or merely incidental. Id.

In the Contract, Voyport describes its business as "provid[ing] business customers with a full-featured, cost-efficient international mobile voice roaming communications service ('Product'), using a combination of dedicated, intelligent international data routing, existing smartphone capabilities, and simplified business integration."[3] Doc. No. 60-2 at 1. Ferrara's job was to "successfully promote, sell and support the Product to the business community within the continental United States of America." Id. Conyers argues that Voyport "was an operating entity" and "had no actual customers." Doc. No. 62 at 2. That is beside the point. Ferrara, as one of Voyport's sales representatives, was responsible for carrying out the company's primary business objective—to promote and sell "the Product" to business communities. This is the

---

[3] Conyers uses the same language to describe the business of Voyport in his Opposition to Motion for Summary Judgment, Doc. No. 62.

service Voyport hired Ferrara to perform, and this is what he did during the period of his employment. Whether or not he or anyone else actually succeeded in securing any customers is irrelevant. Because the services Ferrara performed were within the usual course of Voyport's business, Voyport cannot meet its burden to establish that Ferrara was an independent contractor. Accordingly, Voyport violated the Wage Act by not paying Ferrara during the final five months of his employment.

Summary judgment is therefore ALLOWED as to Count I against Voyport. Ferrara has also moved for default judgment against Voyport, and as to liability on Count I, the motion for default judgment is ALLOWED.

B. Damages Under Count I Against Voyport

In both the motion for summary judgment and the motion for default judgment, Ferrara asks for the following damages on Count I:

$5,500 in base salary x 5 months = $27,500
$250 in health insurance reimbursement x 5 months = $1,250
$250 in commission bonuses x 4 months = $1,000
$29.22 for business cards
$959.78 in late fees accrued by Ferrara
$5,500 in base salary x 3 months = $16,500 (payment-in-lieu-of-notice)
$250 in health ins. reimbursement x 3 months = $750 (payment-in-lieu-of-notice)

Doc. No. 58 at 9-11. As to Voyport, the $27,500 in base salary for 5 months is awarded as "lost wages." Mass. Gen. Laws ch. 149, § 148. Under the Wage Act, this amount is subject to mandatory trebling. Id. Therefore, Ferrara is entitled to an award of $82,500 under Count I against Voyport, subject to possible further enhancements. [4]

---

[4] Though Ferrara argues that the remaining six items properly constitute "lost wages and other benefits" under Mass. Gen. Laws ch. 149, § 148, Conyers opposes this characterization, and contends that none of those items are recoverable under the Wage Act. Accordingly, the Court reserves judgment on whether health insurance, Ferrara's commission bonuses, the business

C. Remaining Counts Against Voyport

There are four other claims pending against Voyport: Count II, a claim under the Massachusetts Minimum Wage Law, Mass. Gen. Laws ch. 151, § 1; Count III, a retaliation claim; Count IV, a breach of contract claim; and Count V, an unjust enrichment claim. While the motion for summary judgment seeks judgment on all claims, Ferrara did not argue Counts II through V. The motion for summary judgment is therefore DENIED as to those four claims.

The motion for default judgment is ALLOWED as to liability on Counts II through V. As to damages, Ferrara has not adequately explained the basis for the damages calculation as it pertains to Counts II through V.[5] Accordingly, Ferrara shall file a status report within seven days proposing a calculation of damages for each remaining Count against Voyport.

D. Claim One Against Conyers

The preceding discussion as to whether Ferrara was an employee applies in full to the Wage Act claim against Conyers, and in rendering that determination, the Court considered all of Conyers's arguments. However, there is an additional question of whether Conyers may be held individually liable under the Wage Act. Under the statute, "[a]ny entity and the president and treasurer of a corporation and any officer or agent having the management of the corporation or entity shall be liable for violations of this section." Mass. Gen. Laws ch. 149, § 148B. The SJC has held that "a manager who 'controls, directs, and participates to a substantial degree in

---

cards, and the late fees are "lost wages and other benefits" under the Wage Act until the claims against Conyers are resolved.

[5] In the motion for summary judgment and the motion for default judgment, Ferrara seeks an additional $17,250 as payment-in-lieu-of-notice under the Contract. Doc. No. 58 at 11. He argues that this amount should be trebled as "lost wages and other benefits" under the Wage Act, but has not sufficiently explained why payment-in-lieu-of-notice falls under the Wage Act. Therefore, the Court also reserves judgment on the claim for damages arising from the payment-in-lieu-of-notice provision of the contract, and Ferrara may provide legal authority in support of his position.

formulating and determining' the financial policy of a business entity may be a 'person having employees in his service' under G.L. c. 149, § 148, and thus may be subject to liability for violations of the Wage Act." Cook v. Patient Edu, LLC, 465 Mass. 548, 549 (2013) (citing Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 711 (2005)). The SJC has also stated that the Wage Act imposes personal liability on "officers or agents who may not hold these titles, but who have assumed and accepted as individuals significant management responsibilities over the corporation similar to those performed by a corporate president or treasurer, particularly in regard to the control of finances or payment of wages." Segal v. Genitrix, LLC, 478 Mass. 551, 559 (2017).

The parties dispute the nature of Conyers's role as CFO of Voyport, and his ability to control finances and the financial policy of the company. See Doc. No. 67 ¶¶ 56-59. Though Ferrara argues that the "Chief Financial Officer of an LLC is plainly in this category," Doc. No. 66 at 11, the question is more nuanced than that. Simply the title of CFO does not suffice to impose personal liability under the Wage Act; only the president and treasurer have personal liability as a result of their title. Rather, the question is whether Conyers controlled, directed, and participated to a substantial degree in formulating and determining the financial policy of Voyport, or whether he accepted significant management responsibilities similar to those performed by a president or treasurer, regarding the control of finances or payment of wages. Moreover, Conyers's role during the five months when Ferrara was not paid is of particular importance.

Conyers has stated under oath that the "scope of [his] work for Voyport II, LLC was limited to handling financial matters for the company, which included cutting checks for

10

company expenses . . . [and] . . . assisting Allen Preece with potential financing through [VGH]."

Doc. No. 63 ¶ 56. Conyers describes his ability to make financial decisions as follows:

> Voyport II, LLC received funds, to the extent they were available, from VGH at the discretion of Allen Preece, who controlled the bank accounts of VGH. Prior to Mr. Ferrara being retained, I had discretion to pay invoices as they came due; however, as funds became scarce at VGH, I no longer had the ability to direct the payment of expenses, and all expense payments had to be cleared through Mr. Preece.

Id. ¶ 57. The record includes five invoices submitted by Ferrara to Conyers, Doc. No. 60-14, after an email discussion in which Conyers instructed Ferrara to submit invoices directly to him, Doc. No. 62-1 at 38. However, Conyers describes the way he processed invoices submitted to him as follows:

> If I received an invoice for payment by Voyport II, LLC, I would note the expense as an account payable and provide that information to a third-party bookkeeper, who then prepared the accounts payable that were provided to Allen Preece to approve. Mr. Preece had a list of all accounts payable for the company and would make decisions on which invoices to pay, or not, and he would then instruct me which invoices should be paid. Again, I could not pay an expense unless and until it was approved and authorized by Mr. Preece.

Doc. No. 63 ¶ 59.

For purposes of summary judgement, the Court accepts these facts and draws all reasonable inferences in Conyers's favor. From these facts, a jury could reasonably conclude that Conyers did not "'control[], direct[], and participate[] to a substantial degree in formulating and determining' the financial policy of" Voyport. Cook, 465 Mass. at 549. Accordingly, these facts raise a genuine dispute of material fact as to whether Conyers assumed and accepted "significant management responsibilities over the corporation similar to those performed by a corporate president or treasurer, particularly in regard to the control of finances or payment of wages." Segal, 478 Mass. 559.

11

Based on the record before the court, there is a genuine dispute of material fact as to whether Conyers is an officer or agent who is individually liable under the Wage Act. Therefore, Ferrara's motion for summary judgment is DENIED as to Count I against Conyers.

E. Remaining Counts Against Conyers

Count II alleges a violation of the Massachusetts Minimum Wage Law, Mass. Gen. Laws ch. 151, § 1. Doc. No. 1 at 13. Count III alleges retaliation under the Wage Act and Minimum Wage Law. Id. Though Ferrara moved for summary judgement on all claims, he failed to argue Counts II and III in his motion for summary judgment, Doc. No. 58, or his Reply Brief, Doc. No. 66. Accordingly, Ferrara's motion for summary judgment is DENIED as to Counts II and III against Conyers.

IV. CONCLUSION

For the foregoing reasons, Ferrara's motion for summary judgment, Doc. No. 58, is ALLOWED as to Count I against Voyport, but is DENIED on Counts II, III, IV, and V against Voyport.

The motion for summary judgment, Doc. No. 58, is DENIED on Counts I, II, and III against Conyers.

Ferrara's motion for default judgment against Voyport, Doc. No. 57, is ALLOWED on all counts as to liability, and on Count I, damages are awarded of at least $82,500.

Within seven days, Ferrara shall file a status report proposing a calculation of damages for Counts II, III, IV, and V against Voyport, as well as the basis for asserting individual liability against Conyers on Counts II and III.

Within seven days, the parties shall file a joint status report stating: 1) the anticipated duration of trial, 2) whether all parties do or do not consent to trial before Magistrate Judge Dein, and 3) whether all parties request an opportunity for mediation prior to trial.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge